**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| QWIKCASH, LLC,<br><br>        Plaintiffs,<br><br>           v.<br><br>BLACKHAWK NETWORK HOLDINGS, INC.,<br>BLACKHAWK NETWORK, INC., and<br>BLACKHAWK NETWORK CALIFORNIA,<br>INC.,<br><br>        Defendants. | Civil Action No. 4:19-cv-876 |

**BLACKHAWK'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................1

II.     ISSUES TO BE DECIDED ..................................................................................3

III.    LEGAL STANDARDS .........................................................................................3

IV.     PLAINTIFF'S DIRECT INFRINGEMENT CLAIM IS NOT PLAUSIBLE ....................4

        A.      Asserted Claim 17 Requires The Initial PIN Creation Procedure to Be
                Between the First Party and the Administrator .........................................5

        B.      Qwikcash's Complaint Does Not Provide a Plausible Assertion that the
                Initial PIN Creation Procedure Is Between the First Party and the
                Administrator ...................................................................................7

        C.      Qwikcash's Complaint Does Not Provide a Plausible Assertion that
                Blackhawk's Gift Cards Have a "Textual Reference identifying Issuance
                of Said PIN" ..................................................................................15

        D.      Qwikcash's Complaint Does Not Provide a Plausible Assertion that
                Blackhawk is Performing the Claimed Step of "Remitting, By the First
                Party, of said PIN and said Qwikcash Ticket to a Second Party" ..........16

V.      PLAINTIFF'S INDIRECT INFRINGEMENT CLAIMS ARE NOT PLAUSIBLE ........16

        A.      Induced Infringement ......................................................................16

        B.      Contributory Infringement ...............................................................18

VI.     CONCLUSION ...............................................................................................19

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*ACTV, Inc. v. Walt Disney Co.*
  346 F.3d 1082 (Fed. Cir. 2003)..................................................................................12

*Akamai Techs., Inc. v. Limelight Networks, Inc.*
  797 F.3d 1020 (Fed. Cir. 2015) (*en banc*) ..............................................................13

*Altiris, Inc. v. Symantec Corp.*
  318 F.3d 1363 (Fed. Cir. 2003)..................................................................................11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)..................................................................................................3, 4

*Atlas IP, LLC v. Commonwealth Edison Co.*
  686 F. App'x 921 (Fed. Cir. 2017) .............................................................................5

*Atlas IP, LLC v. Exelon Corp.*
  189 F. Supp. 3d 768 (N.D. Ill. 2016), aff'd sub nom...............................................5

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)..................................................................................................3, 4

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*
  681 F.3d 1323 (Fed. Cir. 2012)............................................................................17, 18

*Blue Spike, LLC v. Texas Instruments, Inc.*
  No. 6:12-cv-499, 2013 WL 12062263 (E.D. Tex. Sept. 27, 2013).........................18

*Chapterhouse, LLC v. Shopify, Inc.*
  2018 U.S. Dist. LEXIS 219072 (E.D.Tex., Dec. 11, 2018)......................................9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*
  No. 6:14-CV-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015) .....................4

*Diem LLC v. BigCommerce, Inc.*
  No. 6:17 bn -CV-186 JRG-JDL, 2017 WL 9935521 (E.D. Tex. May 11, 2017) .....................4

*DSU Med. Corp. v. JMS Co.*
  471 F.3d 1293 (Fed. Cir. 2006)..................................................................................17

*E-Pass Techs., Inc. v. 3Com Corp.*
  473 F.3d 1213 (Fed. Cir. 2007)..................................................................................11

*Erickson v. Pardus*
  551 U.S. 89 (2007) ........................................................................................3

*Gonzalez v. Kay*
  577 F.3d 600, 603 (5th Cir. 2009) ...............................................................4

*Global-Tech Appliances, Inc. v. SEB S.A.*
  131 S. Ct. 2060 (2011) ................................................................................17

*Hole v. Texas A&M Univ.*
  360 Fed. Appx. 571 (5th Cir. 2010) .............................................................4

*In re Katrina Canal Breaches Litig.*
  495 F.3d 191 (5th Cir. 2007) .......................................................................3

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*
  545 F.3d 1340 (Fed. Cir. 2008) ..................................................................18

*Mantech Envtl. Corp. v. Hudson Envtl. Servs.*
  152 F.3d 1368 (Fed. Cir. 1998) ..................................................................11

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*
  420 F.3d 1369 (Fed. Cir. 2005) ..................................................................16

*Mformation Techs., Inc. v. Research in Motion Ltd.*
  764 F.3d 1392 (Fed. Cir. 2014) ..................................................................12

*Mobile Telcoms. Techs., LLC v. Google Inc.*
  2016 U.S. Dist. LEXIS 174667 (E.D. Tex. Dec. 19, 2016) .......................11

*Phillips v. AWH Corp.*
  415 F.3d 1303, 2005 U.S. App. LEXIS 13954, 75 U.S.P.Q.2D (BNA) 1321 ........................11

*Southwall Techs., Inc. v. Cardinal IG Co.*
  54 F.3d 1570 (Fed. Cir. 1995) ....................................................................13

*TeleSign Corp. v. Twilio, Inc.*
  No. 16-cv-2106-PSG, 2016 WL 4703873 (C.D. Cal. Aug. 3, 2016) ............4

*Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.*
  No. 2:13-cv-38-JRG, 2014 WL 894805 (E.D. Tex Mar. 3, 2014) ..............18

*Uniloc USA, Inc. v. Huawei Device USA, Inc.*
  2018 U.S. Dist. LEXIS 210918, 2018 WL 6590079 (E.D. Tex. Dec. 14, 2018) ..............11

*Vitronics Corp. v. Conceptronic, Inc.*
  90 F.3d 1576 (Fed. Cir. 1996) ....................................................................11

-iii-

*VStream Techs., LLC v. PLR IP Holdings, LLC*
    No. 6:15-cv-974-JRG-JDL, slip op. (E.D. Tex. Aug. 24, 2016)...............................................4

<u>Statutes</u>

35 U.S.C. § 271(a) .......................................................................................................13

35 U.S.C. § 271(b) .......................................................................................................18

35 U.S.C. § 271(c) .......................................................................................................17

## BLACKHAWK'S MOTION TO DISMISS

I.      **INTRODUCTION**

On November 26, 2019, Plaintiff Qwikcash, LLC ("Qwikcash") filed suit against Defendants Blackhawk Network Holdings, Inc., Blackhawk Network, Inc., and Blackhawk Network California, Inc., (collectively "Blackhawk") asserting infringement of U.S. Patent No. 8,714,445 (the "'445 Patent"). Complaint at ¶1.

Even if every fact alleged in the Complaint is accepted as true, the Complaint fails to state a claim for relief that is plausible on its face. The asserted patent claim requires two separate personal identification number ("PIN") selection procedures, but the Complaint only identifies one such PIN selection.  This failure to plausibly allege a required limitation in the asserted patent claim requires that the Complaint be dismissed. And, the omission of a required limitation prohibits the Court from drawing the reasonable inference that the defendant is liable for the alleged misconduct.

More specifically, Plaintiff asserts direct infringement of claim 17 of the '445 Patent in paragraphs 16-36 of the Complaint. In those allegations, Qwikcash attempts to cobble together "plausible" allegations by cutting and pasting short snippets of claim language and alleged screenshots from www.giftcards.com[1] with little or no explanation of how each screenshot shows the actual claim limitations.

Asserted claim 17 includes 12 separate method steps involving three different parties (a "first party" requestor, "second party" receiver, and third party "administrator/issuer") related to

---

[1] Qwikcash's Complaint fails to cite the specific webpage where it obtained screenshots, or provide full-page images of those pages as exhibits, on several other occasions, which prevents Blackhawk and the Court from verifying Qwikcash's allegations.

the creation, transfer, and use of a "Qwikcash ticket." Qwikcash's snippet-and-screenshot approach falls far short of showing or explaining how the detailed method steps of claim 17 are being performed by and between particular parties.

For example, claim 17 requires two distinct PIN selection procedures related to the creation and use of a "Qwikcash" ticket. First, in ***an initial PIN creation procedure***, the claim recites a sequential set of "requesting," "supplying," and "issuing" steps during the creation of a Qwikcash ticket, where the third party "administrator" requests from a "first party" requestor a PIN, the "first party" requestor supplies the PIN to the "administrator," and the "administrator" issues a Qwikcash ticket with the PIN. Second, ***in a required PIN change procedure***, after the "second party" receives the Qwikcash ticket from the "first party," the "second party" changes the PIN by communicating with the "administrator."

Qwikcash's Complaint, however, fails to provide a plausible allegation that Blackhawk's system performs at least the initial PIN creation procedure, *i.e.*, it does not explain how Blackhawk (the "administrator" in Qwikcash's reading) requests a PIN ***from a customer*** seeking to purchase a gift card (the "first party" in Qwikcash's reading), or how the ***customer supplies a PIN to Blackhawk***. *See* Complaint ¶¶ 23-25. And Qwikcash cannot show such steps, as they do not happen in Blackhawk's system. Indeed, the "Set/Change PIN" screenshot relied on by Qwikcash to support paragraph 23 of the Complaint is an option for a gift card ***recipient*** (the "second party" in Qwikcash's reading) to set a PIN, not a ***customer***. The page requires entry of the gift card number and CVN, which would not be known by a customer prior to the gift card's issuance -- this provides logical proof that the "first party" could not possibly supply a PIN before the card issues. Moreover, the screenshot used to support paragraph 24 clearly states that "Personal Identification Numbers (PIN) are not required" making this entirely the option of the

-2-

recipient.  The card is fully functional without a PIN "as credit transactions."  *See* Complaint at ¶ 24.

Finally, the URL provided on page 4 of the complaint, www.giftcards.com, expressly shows Blackhawk cannot infringe, because it does not "issue" the Accused Products.

Qwikcash's indirect infringement assertions (Complaint at ¶¶ 37-40) are even worse as they, at best, simply restate the elements of induced and contributory infringement claims without ***any*** supporting facts. And, in any event, because a direct infringement is a necessary component of any indirect infringement assertion, Qwikcash's failure to show any direct infringement is fatal to these assertions.

These basic deficiencies put Qwikcash's complaint well short of the pleading standard required by *Twombly* and *Iqbal*. In view of these deficiencies, Blackhawk respectfully requests that Qwikcash's infringement claims be dismissed.

## II.    ISSUES TO BE DECIDED

***Issue #1***: Do Qwikcash's allegations of direct infringement, which fail to show several requirements of asserted claim 17, fail to state a plausible claim for relief?

***Issue #2***: Do Qwikcash's allegations of indirect infringement, which fail to include any factual support for the required elements, fail to state a plausible claim for relief?

## III.   LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Although the Court must accept as true all factual allegations of the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; *Hole v. Texas A&M Univ.*, 360 Fed. Appx. 571, 573 (5th Cir. 2010). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

## IV.    PLAINTIFF'S DIRECT INFRINGEMENT CLAIM IS NOT PLAUSIBLE

Plaintiff's infringement allegations must comport with the pleading requirements of Federal Rule of Civil Procedure 8, as defined by the Supreme Court in *Twombly* and *Iqbal*. Here, in the patent context, Qwikcash needs to "plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-751-JDL, 2015 WL 5000397, at *2 (E.D. Tex. June 3, 2015) (quoting *Twombly*, 550 U.S. at 565 n.10). Qwikcash's complaint must "provid[e] facts sufficient to create a plausible inference that each element of the claim is infringed by the accused products." *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186 JRG-JDL, 2017 WL 9935521, at *2 (E.D. Tex. May 11, 2017); *see also TeleSign Corp. v. Twilio, Inc.*, No. 16-cv-2106-PSG, 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016) ("a plaintiff must include allegations sufficient to permit the court to infer that the accused product infringes each element of at least one claim" (quotation marks omitted) (alteration omitted). The key "is not just identifying [] products, but identifying how those products

allegedly infringe the Asserted Patent claims." *See VStream Techs., LLC v. PLR IP Holdings, LLC*, No. 6:15-cv-974-JRG-JDL, slip op. at 7 (E.D. Tex. Aug. 24, 2016).

Specific factual allegations supporting infringement claims are required under *Twombly* and *Iqbal*, because without them, the court and defendant cannot test whether infringement is plausible. Once facts are pled, the plausibility of infringement is tested against those facts, which may be insufficient to make infringement plausible. *See Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 778 (N.D. Ill. 2016), aff'd sub nom. *Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) (dismissing claim for direct infringement with prejudice where plaintiff's "detailed description of how the [accused] Network Products function" made it implausible that another element of the asserted claim was embodied by the accused products).

Qwikcash's Complaint has not provided plausible allegations of direct infringement.

## A.    Asserted Claim 17 Requires The Initial PIN Creation Procedure to Be Between the First Party and the Administrator

The '445 Patent is directed to a method of conveying money that "employs the use of a unique article, which is termed herein as 'QwikCash.'" '445 Patent (D.I. 1, Ex. A) at Col. 3:64-65. Qwikcash tickets are essentially paper or smartphone-displayable vouchers, such as is shown in FIG. 1A. The '445 Patent's method of creating, sending, and using a Qwikcash ticket is shown in FIG. 2, and involves three different parties: (i) a "first party" requestor of the Qwikcash ticket; (ii) a "second party" receiver of the Qwikcash ticket; and (iii) a third party "administrator/issuer" of the Qwikcash system that issues the Qwikcash ticket upon the "first party's" request.[2]

---

[2] The '445 Patent also explicitly states that its method is an improvement over prior methods including cash transfer, PayPal, and, importantly, ***pre-paid gift cards***. '445 Patent at 1:53-63. Despite this explicit teaching away from pre-paid gift cards, Qwikcash has nonetheless asserted the '445 Patent against Blackhawk's ***pre-paid gift card products***. Complaint at ¶16.

As recited in asserted claim 17 and discussed in more detail below, the "first party" adds security to the Qwikcash ticket by supplying a desired PIN to be associated with the Qwikcash ticket by the administrator/issuer (*e.g.*, by associating the PIN with the GUID). '445 Patent at 2:53, 55-57. This is accomplished at the time of purchase (*e.g.*, step 1 in FIG. 2). '445 Patent at 4:36-41; 6:8-9; and 6:24-28. The first party then informs the second party recipient of the PIN when the first party gives the Qwikcash ticket to the second party, so that the second party can use the PIN to complete his transaction(s). '445 Patent at 4:40-41, 5:34-42. The second party then changes the PIN when he takes possession of the Qwikcash ticket. '445 Patent at 7:60-67.

Qwikcash asserts that Blackhawk is infringing independent claim 17. As shown in the annotated version here, claim 17 is not simple, it includes 12 separate main method steps (with sub-steps) involving the three different parties identified above to allow the creation, transfer, and use of a Qwikcash ticket. As shown, the 12 main method steps can be grouped into three sets of distinct party interactions.  First, the Qwikcash ticket is issued by interactions between the first party and administrator. This is shown by a blue bracket in the annotated version of claim 17. Second, the

**Creating the Qwikcash ticket by interactions between the first party and administrator**

**Delivering the Qwikcash ticket to the second party by the first party**

**Using the Qwikcash ticket by interactions between the second party and administrator**

17. A method of operating a monetary value transfer system for the conveying of monetary value between at least two parties, said method comprising:

requesting, by a first party, of a total amount of monetary value to be in one or more desired incremental monetary amounts;

providing a payment, by the first party, for said total amount of monetary value;

requesting, by an administrator, of a personal identification number (PIN);

supplying, by the first party, of an alpha-numeric-symbolic PIN;

issuing, by the administrator, of a QwikCash ticket; said QwikCash ticket comprising a machine scannable globally unique identifier (GUID), said GUID of said QwikCash ticket corresponding to said total amount of monetary value, said QwikCash ticket further comprising a textual reference denoting said monetary value and comprising a textual reference identifying issuance of said PIN;

activating, by the administrator, of said QwikCash ticket by associating said PIN, within an administrator database in said storage media, with said GUID of said QwikCash ticket;

delivering, by the administrator, of said QwikCash ticket to the first party;

remitting, by the first party, of said PIN and said QwikCash ticket to a second party;

verifying, by the second party, of said QwikCash ticket being active, by communicating said PIN and said GUID of said QwikCash ticket to the administrator;

receiving a reply from the administrator confirming or denying said GUID remaining active for said QwikCash ticket;

communicating, by the second party, with the administrator, and requesting, by the second party, for changing of said PIN for said QwikCash ticket of said at least a first QwikCash ticket to a new PIN; and

associating, by the administrator within the administrator database, of said new PIN with said GUID of said at least a first QwikCash ticket, and with its respective incremental monetary amount.

Qwikcash ticket is delivered to the second party by the first party. This is shown with a red bracket. Third, the Qwikcash ticket is used by the second party via interactions between the second party and administrator. This is shown with a green bracket.

As discussed above, claim 17 requires two distinct PIN selection procedures. An ***initial PIN creation procedure*** is set forth in the first set of interactions (*e.g.*, the steps in the blue bracket), by claim 17's recitation that: (i) the administrator requests a PIN from the first party; (ii) the first party supplies a PIN to the administrator; and (iii) the administrator creates the Qwikcash ticket with a "textual reference identifying issuance of ***said PIN***" and activates the Qwikcash ticket by "associating ***said PIN*** with" the GUID (emphases added). In other words, the PIN associated with the GUID by the administrator is the PIN supplied by the first party.

***A required PIN change procedure*** is found in the third set of interactions (in the green bracket), where claim 17 recites that the second party recipient (after it receives the Qwikcash ticket and PIN from the first party as shown in the red bracket) changes "said PIN" (the PIN supplied by the first party and associated with the Qwikcash ticket's GUID by the administrator) by communicating with the administrator.

**B.      Qwikcash's Complaint Does Not Provide a Plausible Assertion that the Initial PIN Creation Procedure Is Between the First Party and the Administrator/Issuer**

In its direct infringement assertions, Qwikcash does not provide plausible assertions that the Blackhawk system performs the steps of: (i) "requesting, by an administrator, of a personal identification number (PIN)" (*i.e.*, a PIN request from the administrator to the first party); and (ii) "supplying, by the first party, of an alpha-numeric-symbolic PIN" (*i.e.*, supplying a PIN from the first party to the administrator).

Rather, Qwikcash asserts that the sequential "requesting" and "supplying" steps are respectively satisfied by: (i) Blackhawk providing a PIN entry page for gift card *recipients* to set or change a PIN (https://www.giftcards.com/pin; Complaint, ¶ 23); and (ii) the customer providing a gift card to a recipient with a default PIN corresponding to the last four digits of the gift card number (Complaint, ¶ 24). Such assertions do not advance a plausible showing of infringement of the identified claim limitations, and are nonsensical on their face.

1. ***The Complaint's Assertions Regarding the "Requesting" and "Supplying" of a PIN In The Initial PIN Creation Procedure Are Not Plausible***

Regarding the "requesting" step, Qwikcash asserts the following:

23.    As shown below, Blackhawk requests personal identification numbers ("PIN") for the Accused Products by stating "Enter Desired 4-digit PIN" on its website www.giftcards.com/pin.



But the screenshot provided by Qwikcash from (on Blackhawk's belief) https://www.giftcards.com/pin in no way shows "requesting, by an administrator, of a personal identification number (PIN)" for at least two reasons.

First, it does not explain how Blackhawk is "requesting" a PIN at all.[3] This page does not affirmatively **request** anything. It is a passive page that can be accessed by a gift card **recipient** (*i.e.*, the second party in Qwikcash's reading), of their own volition, to set or change a PIN.[4]

Second, even if the page could be considered as "requesting" a PIN in the abstract sense, the request is not directed from Blackhawk to a first party requestor, as this limitation is properly understood. Only a gift card **recipient** could enter information on this page, because it requires entry of the 16 digit card number and CVN of the gift card to set or change the PIN. Only a second party **recipient** would have this information. A first party **requestor** would never know the card number or CVN, because the gift card has not been issued at the time the first party requestor is purchasing the card.[5]

Regarding the "supplying" step, Qwikcash asserts the following:

> 24.    The requester of the Accused Products supplies the recipients of the reward cards with alpha-numeric PINs in the form of the last four digits of the card numbers.

---

[3] Qwikcash also cannot rely on screenshots without explanation. *See, e.g., Chapterhouse, LLC v. Shopify, Inc.*, 2018 U.S. Dist. LEXIS 219072, *6 (E.D.Tex., Dec. 11, 2018) ("While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the Iqbal/Twombly standard is met").

[4] Indeed, Qwikcash utilized the same screenshot to support its allegation of a PIN change by the second party, as discussed below.

[5] Nor would this data entry be required if Blackhawk was affirmatively "requesting" a PIN change, because it would already be known to Blackhawk.



But neither the allegation in paragraph 23 nor the related screenshot shows "supplying, by the first party, of an alpha-numeric-symbolic PIN" because it does not explain how the PIN is supplied from the first party to the administrator, as this limitation is properly understood.

Rather, Qwikcash's allegation here is that a PIN is "supplied" within the meaning of this limitation by the first party requestor giving the second party recipient a gift card with a pre-set PIN (*i.e.*, a PIN the requestor did not supply) equivalent to the last four digits of the card number. In other words, it appears that Qwikcash is trying to read the requirement that the "supplying …" step be from the first party to the administrator out of the claim, and that ***any*** "supplying" of PIN information at any time to anyone by the first party will do. But that is not a reasonable reading of the requirements of claim 17.

First, the very structure of claim 17 dictates[6] that the first set of interactions (including the PIN creation procedure) are between the "first party" and "administrator/issuer." For example, the "requesting, by an administrator …", "supplying, by the first party …", and "issuing, by the administrator" steps are consecutive; the normal reading of which would be that

> requesting, by an administrator, of a personal identification number (PIN);
> supplying, by the first party, of an alpha-numeric-symbolic PIN;
> issuing, by the administrator, of a QwikCash ticket; said QwikCash ticket comprising a machine scannable globally unique identifier (GUID), said GUID of said QwikCash ticket corresponding to said total amount of monetary value, said QwikCash ticket further comprising a textual reference denoting said monetary value and comprising a textual reference identifying issuance of said PIN;
> activating, by the administrator, of said QwikCash ticket by associating said PIN, within an administrator database in said storage media, with said GUID of said QwikCash ticket;

"supplying" is responsive to "requesting." Further, the "activating, by the administrator …" step requires associating "said PIN" with the Qwickcash ticket's GUID. The only PIN in the claim to which "said PIN' could refer is the PIN supplied by the "first party" in the "supplying …" step. In other words, for the claim to make sense, the PIN used in the "associating" step must be provided by the "first party." No other PIN exists.[7]

---

[6] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314, 2005 U.S. App. LEXIS 13954, *27, 75 U.S.P.Q.2D (BNA) 1321, 1327 (finding that "the claims themselves provide substantial guidance" as to their meaning, citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

[7] The language of claim 17 dictates that the order of its steps be followed. *See, e.g., Mantech Envtl. Corp. v. Hudson Envtl. Servs.*, 152 F.3d 1368, 1376, (Fed. Cir. 1998) (holding that the steps of a method claim must be interpreted to have an order where "the sequential nature of the claim steps is apparent from the plain meaning of the claim language."). *See also E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007) ("[B]ecause the language of most of the steps of its method claim refer to the completed results of the prior steps, E-Pass must show that all of those steps were performed in order."), *Uniloc USA, Inc. v. Huawei Device USA, Inc.*, 2018 U.S. Dist. LEXIS 210918, *35, 2018 WL 6590079 (E.D. Tex. Dec. 14, 2018) (holding that method steps must be peformed in the recited order where dictated by logic), citing *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003), and *Mobile Telcoms. Techs., LLC v. Google Inc.*, 2016 U.S. Dist. LEXIS 174667, *56, 65-66 (E.D. Tex. Dec. 19, 2016) (holding that because the sequential steps relied on the previous steps, the steps of the claims must be (footnote continued)

Second, the specification fully supports this reading, as the claim reads directly on the primary PIN provision embodiment where a "first party" requestor supplies a PIN and the administrator then associates it with the requested Qwikcash ticket. '445 Patent at 2:55-57; 4:36-41; 6:8-9; and 6:24-28.[8]

Moreover, Qwikcash's interpretation of the "supplying …" a PIN step as being met by a requester (the first party) sending a reward card with a pre-set PIN to a recipient (the second party) cannot be correct in view of the remaining limitations of the claim.[9] For example, claim 17 explicitly requires, in a separate later step (*see* red bracket in annotated version above): "remitting, by the first party, of said PIN and said QwikCash ticket to a second party." Thus, the claim affirmatively requires transfer of ***the ticket and PIN*** from the first party to the second party in this later step. The "supplying …" a PIN step cannot be read to redundantly cover that same action, as Qwikcash incorrectly asserts. In other words, there would be no need to remit the PIN to the second party in the "remitting …" step if it were being sent to the recipient in the "supplying …" step as Qwikcash alleges. And Qwikcash recognizes this logical incoherence in its Complaint, as its par. 32, directed to the "remitting …" limitation, asserts only that "the

---

performed in the order recited), citing *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1400 (Fed. Cir. 2014) ("As a matter of logic, a mailbox must be established before the contents of said mailbox can be transmitted.").

[8] While other embodiments of PIN usage are disclosed by the '445 Patent, including presetting a PIN by the administrator when offering Qwikcash tickets with preprinted amounts via a store or vending machine with no internet access ('445 Patent at 6:10-17; 6:34-37), they are irrelevant to understanding claim 17, because those alternative embodiments do not permit a PIN to be "supplied" by the first party in the context of the claim. See '445 Patent at 6:37-40 ("the PIN would not be user-selected at the time of purchase and would be assigned by the QwikCash Transfer Co. when it generated and packaged with the ticket").

[9] *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered" to understand claim limitations).

requesters distribute the Accused Products to the recipients" – ignoring the claim's requirement that the PIN *also* be remitted.[10] Qwikcash cannot have it both ways.

As an additional matter, the "issuing, by the administrator" step requires that the administrator is also the issuer, which is not the case for the Accused Products. As shown at the bottom of the Blackhawk website used to support paragraphs 16-17 of the Complaint (https://www.giftcards.com/reward-cards-old/for-business), MetaBank is the issuer of the Accused Products, not Blackhawk.[11]

Because Qwikcash's Complaint fails to advance a plausible allegation that this claim element is found in Blackhawk's system, the Complaint must be dismissed.[12]

### 2.    *The Complaint's Assertions Regarding the PIN Change Procedure Demonstrate its Deficiencies as to the Initial PIN Creating Procedure*

As for the PIN change procedure required by claim 17, Qwikcash's allegations are as follows:

---

[10] This failure alone demonstrates Qwikcash's failure to show a plausible case of infringement here, because, "[t]o establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

[11] Qwikcash has not provided a screenshot of https://www.giftcards.com/reward-cards-old/for-business in its entirety. The portions of the webpage undisclosed by Qwikcash on page 4 of the Complaint, states: The GiftCards.com Visa® Gift Card and The GiftCards.com Visa Gift Virtual Account are **issued by MetaBank®** …. The GiftCards.com Visa Reward Cards are **issued by MetaBank** …. The GiftCards.com Mastercard® Gift Cards are **issued by MetaBank** …. Mastercard Virtual Account is **issued by MetaBank**…." (emphasis added).  MetaBank is unrelated to Blackhawk.

[12] Nor, despite identifying three separate parties allegedly performing the method of asserted claim 17 in pars. 20-36, has Qwikcash asserted how Blackhawk directs or controls the acts of, or forms a joint enterprise with, the "requester" and "recipient." Thus, Qwikcash has not plausibly asserted infringement under 35 U.S.C. § 271(a) for this reason as well. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015) (*en banc*).

35.     The recipients of the Accused Products communicate with Blackhawk to change the original PIN to a new PIN.



As discussed above, this screenshot appears to be the ***same*** as that cited by Qwikcash as allegedly showing the "requesting" step of the initial PIN creation procedure (https://www.giftcards.com/pin), although Qwickcash has for some reason deleted the right hand portion of the image previously presented.

Even if this screenshot can be understood to meet the claim limitation of allowing a second party recipient to change a PIN associated with a Qwikcash ticket, it cannot also provide the "requesting" or "supplying" steps above, for at least the reasons discussed above. Nor has Qwikcash explained how the same purported evidence can show two distinct claim features.

**C.     Qwikcash's Complaint Does Not Provide a Plausible Assertion that Blackhawk's Gift Cards Have a "Textual Reference identifying Issuance of Said PIN"**

After asserting that a default PIN for Visa gift cards is the last four digits of the card number (Complaint at ¶ 24), Qwikcash asserts the following regarding claim 17's requirement that the Qwikcash ticket has a "textual reference identifying issuance of said PIN":

> 29.    The Accused Products also include a textual reference to the PIN, such as 9010 in the example below.



The last four digits of an account number on a gift card, however, cannot be the "textual reference identifying issuance of said PIN" recited in claim 17. This is because the '445 Patent explicitly teaches that the claimed "textual reference" is an indication that there **is** a PIN and that the indication is not the PIN **itself**. *See* '445 Patent at 7:20-23 and 23-26 ("[t]he PIN code signifier 25 would of course not be the actual code, but would simply signify to, or alert, the holder of the ticket that the corresponding PIN will be required to redeem that particular ticket for its face value"). In other words, the "textual reference" cannot be the default PIN as Qwikcash asserts. The images above give no textual reference or any other indication that there is a PIN.

Thus, in addition to the failures of the Complaint to plausibly show the initial PIN creation procedure above, it also fails to set forth a plausible infringement assertion for this element.

> **D.      Qwikcash's Complaint Does Not Provide a Plausible Assertion that Blackhawk is Performing the Claimed Step of "Remitting, By the First Party, of said PIN and said Qwikcash Ticket to a Second Party"**

As discussed above in Section B(1), claim 17 requires, subsequent to the Qwikcash ticket's issuance by the administrator to the first party, "remitting, by the first party, of said PIN and said Qwikcash ticket to a second party." Qwikcash's Complaint alleges only that "the requesters distribute the Accused Products to the recipients" with regard to this step (Complaint ¶ 32); it fails to assert or explain how the requester *also* distributes the PIN to the recipient. And it logically cannot because, as discussed above, Qwikcash (incorrectly) asserts that the PIN has already been provided from the requester to the recipient according to the "supplying …" step. *See* Complaint ¶ 24. Qwikcash cannot logically assert that the PIN is *again* transferred according to this step, or find such a double PIN transfer in Blackhawk's system, so it simply ignores the requirements of this claim element.

Thus, in addition to the failures of the Complaint to plausibly show the initial PIN creation procedure and the "textual reference identifying issuance of said PIN" above, it also fails to set forth a plausible infringement assertion for this element.

## V.      PLAINTIFF'S INDIRECT INFRINGEMENT CLAIMS ARE NOT PLAUSIBLE

### A.      Induced Infringement

A claim for induced infringement under 35 U.S.C. §271(b) requires proof (1) of an act of direct infringement by another, and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC Elec. Materials, Inc. v.*

*Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). The intent element requires that the defendant "[know] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."). Thus, to pass muster, the complaint must contain facts plausibly showing that the defendant (1) specifically intended for its customers to infringe the asserted patent, and (2) knew that the customer's acts constituted infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Qwikcash's assertions of induced infringement consists of two paragraphs of conclusory assertions that Blackhawk induces "purchasers of the Accused Products" and "end-users who receive the Accused Products" to directly infringe claim 17 of the '445 Patent by purchasing and redeeming the Accused Products. Complaint ¶¶ 37, 38. These paragraphs, at best, simply restate the elements of an inducement claim – they do not contain any supporting facts.

For example, to show a direct infringement, Qwikcash relies on the "foregoing activities" in the preceding paragraphs of its Complaint. But, for at least the reasons identified above, the complaint fails to plausibly identify ***any*** direct infringement by ***any*** party, let alone how a purchaser or end user possibly infringes claim 17. Thus, Qwikcash's inducement claim fails for this reason alone.

Further, Qwikcash's Complaint does not contain any facts plausibly showing that Blackhawk possessed the specific intent to encourage any other party to infringe the '445 Patent. Qwikcash must claim more than just that Blackhawk intended to cause the underlying acts that ultimately resulted in an (alleged) direct infringement. Qwikcash instead must plead facts

showing that the alleged infringer was culpable in encouraging another's infringement. *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008); *Tierra Intelectual Borinquen, Inc. v. Asus Computer Int'l, Inc.*, No. 2:13-cv-38-JRG, 2014 WL 894805, at *5 (E.D. Tex Mar. 3, 2014) ("[I]t is clear that induced infringement requires specific intent, as distinguished from mere knowledge. Such intent must be proven by evidence of affirmative acts undertaken by the defendant to encourage or otherwise promote infringement.").

The Complaint fails to include any facts supporting Blackhawk's alleged culpability, such as that Blackhawk intended to cause underlying allegedly infringing acts. Likewise, the Complaint does not contain any facts plausibly showing that Blackhawk knew that any acts by "purchasers of the Accused Products" and "end-users who receive the Accused Products" constituted (alleged) infringement.

Thus, Qwikcash's Complaint does not set forth a plausible inducement claim, and it should be dismissed.

### B.      Contributory Infringement

Qwikcash's assertions of contributory infringement are also lacking.

Claims for contributory infringement under 35 U.S.C. § 271(c) require plausible allegations that: (1) there is an act of direct infringement; (2) components supplied by the defendant are "material to practicing the invention"; (3) components supplied by the defendant have "no substantial non-infringing uses"; and (4) the defendant "knows [its] product[s] [are] especially made or adapted for an infringing use." *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, 2013 WL 12062263, at *1 (E.D. Tex. Sept. 27, 2013) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012)).

Like its assertions of induced infringement, Qwikcash's assertions of contributory infringement consist of two paragraphs of conclusory assertions that Blackhawk is "inducing" "purchasers … of the Accused Products" and "end-users who redeem … the Accused Products" to directly infringe claim 17 of the '445 Patent by purchasing and redeeming the Accused Products. Complaint ¶¶ 39, 40. These paragraphs, at best, simply restate the elements of a contributory infringement claim – they do not contain any supporting facts.

For example, to show a direct infringement, Qwikcash relies on the "foregoing activities" in the preceding paragraphs of its Complaint. But, for at least the reasons identified above, the Complaint fails to plausibly identify *any* direct infringement by *any* party, let alone how one a purchaser or end user alone possibly infringes claim 17. Thus, Qwikcash's contributory infringement claim fails for this reason alone.

Second, the Complaint does not contain any facts to support elements (2)-(4) identified above, *i.e.*, that: (2) components supplied by defendant are "material to practicing the invention"; (3) components supplied by defendant have "no substantial non-infringing uses"; and (4) defendant "knows [its] product[s] [are] especially made or adapted for an infringing use." Qwikcash's Complaint is simply silent on these elements.

Thus, Qwikcash's Complaint does not set forth a plausible contributory infringement claim, and it should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, Blackhawk respectfully requests that the Court dismiss Qwikcash's Complaint.

Dated:  January 22, 2020

Respectfully submitted,


By: */s/ Jason Mueller*
        JASON MUELLER
        SHEPPARD, MULLIN, RICHTER &
        HAMPTON LLP
        2200 Ross Ave, 24th Floor
        Dallas, TX 75201
        Telephone: 469.391.7400
        Facsimile: 469.391.7401
        JMueller@sheppardmullin.com

        TIMOTHY P. CREMEN
        SHEPPARD, MULLIN, RICHTER &
        HAMPTON LLP
        2099 Pennsylvania Avenue, N.W.
        Suite 100
        Washington, DC 20006-6801
        Telephone: 202.747.1900
        Facsimile: 202.747.1901
        TCremen@sheppardmullin.com

        **Attorneys for Defendants Blackhawk Network
        Holdings, Inc., Blackhawk Network, Inc., and
        Blackhawk Network California, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was filed electronically in compliance with Local Rule CV-5, and thereby served on all counsel who have consented to electronic service on this 22nd day of January, 2020.

*/s/ Jason Mueller*
Jason Mueller