UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| QWIKCASH, LLC | § |
| | § |
| v. | § CIVIL NO. 4:19-CV-876-SDJ |
| | § |
| BLACKHAWK NETWORK | § |
| HOLDINGS, INC., ET AL. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss, (Dkt. #11), filed by Defendants Blackhawk Network Holdings, Inc., Blackhawk Network, Inc., and Blackhawk Network California, Inc. (collectively "Blackhawk"). In the motion, Blackhawk asserts that Plaintiff Qwikcash, LLC ("Qwikcash") has failed to plead facts sufficient to state claims for direct infringement, induced infringement, and contributory infringement of a patent. (Dkt. #11). Qwikcash filed a response in opposition, (Dkt. #12), and Blackhawk submitted a reply in support of the motion, (Dkt. #14). The Court, having reviewed the parties' submissions and the applicable law, **GRANTS** Blackhawk's Motion to Dismiss.

### I. BACKGROUND

Qwikcash has filed suit against Blackhawk alleging direct and indirect infringement of U.S. Patent No. 8,714,445 ("the '445 Patent"). (Dkt. #1). Specifically, Qwikcash alleges infringement of claim 17 of the '445 Patent through Blackhawk's "Branded Reward Cards" ("Reward Cards"), which Blackhawk made, used, offered for sale, and sold throughout the United States. (Dkt. #1 ¶ 16). According to Qwikcash,

1

the Reward Cards allow a company to transfer monetary value to another party as part of the company's incentive program. (Dkt. #1 ¶¶ 16, 20).

Qwikcash's '445 Patent encompasses "a new and unique method of effecting payment from a purchase to a merchant, or of simply conveying monetary value between two parties without a corresponding exchange of goods/services." '445 Patent, col. 3 ll. 60–64. Claim 17 of the '445 Patent includes a dozen separate method steps involving three different parties in the creation, transfer, and use of a "Qwikcash ticket": a "first-party" requestor, a "second-party" receiver, and a third-party "administrator/issuer." Specifically, claim 17 reads as follows:

> A method of operating a monetary value transfer system for the conveying of monetary value between at least two parties, said method comprising:
>
> requesting, by a first party, of a total amount of monetary value to be in one or more desired incremental monetary amounts;
>
> providing a payment, by the first party, for said total amount of monetary value;
>
> requesting, by an administrator, of a personal identification number (PIN);
>
> supplying, by the first party, of an alpha-numeric-symbolic PIN;
>
> issuing, by the administrator, of a QwikCash ticket; said QwikCash ticket comprising a machine scannable globally unique identifier (GUID), said GUID of said QwikCash ticket corresponding to said total monetary value, said QwikCash ticket further comprising a textual reference denoting said monetary value and comprising a textual reference identifying issuance of said PIN;
>
> activating, by the administrator, of said QwikCash ticket by associating said PIN, within an administrator database in said storage media, with said GUID of said QwikCash ticket;

>   delivering, by the administrator, of said QwikCash ticket to the first party;
>
>   remitting, by the first party, of said PIN and said QwikCash ticket to a second party;
>
>   verifying, by the second party, of said QwikCash ticket being active, by communicating said PIN and said GUID of said QwikCash ticket to the administrator;
>
>   receiving a reply from the administrator confirming or denying said GUID remaining active for said QwikCash ticket;
>
>   communicating, by the second party, with the administrator, and requesting, by the second party, for changing of said PIN for said GUID of said at least a first QwikCash ticket to a new PIN; and
>
>   associating, by the administrator within the administrator database, of said new PIN with said GUID of said at least a first Qwikcash ticket, and with its respective incremental monetary amount.

'445 Patent, col. 15 ll. 9–29, col. 16 ll. 1–22.

Blackhawk moves for the dismissal of Qwikcash's Complaint and the three claims contained therein under Federal Rule of Civil Procedure 12(b)(6),[1] arguing that Qwikcash has failed to state a claim that is plausible on its face. (Dkt. #11 at 6). In support of this contention, Blackhawk argues that the infringement allegations in Qwikcash's Complaint cannot be reconciled with the plain text of claim 17 of the '445 Patent, and that this contradiction dooms the Complaint. *See* (Dkt. #11 at 6).

In particular, Blackhawk asserts that claim 17 requires two distinct PIN-selection procedures to activate a "Qwikcash" ticket. First, according to Blackhawk,

---

[1] While Blackhawk's motion does not cite a specific Federal Rule of Civil Procedure, Blackhawk appears to invoke Rule 12(b)(6). *See* (Dkt. #11 at 1) ("[T]he Complaint fails to state a claim for relief that is plausible on its face."). As such, the Court will consider the Motion, (Dkt. #11), as a motion made pursuant to Rule 12(b)(6).

3

in an initial PIN-creation procedure, the claim recites a set of "requesting," "supplying," and "issuing" steps during the creation of a Qwikcash ticket, where the third-party "administrator" requests from a "first-party" requestor a PIN, the "first-party" requestor supplies the PIN to the "administrator," and the "administrator" issues a Qwikcash ticket with the PIN. Second, in a required PIN-change procedure, after the "second party" receives the Qwikcash ticket from the "first party," the "second party" changes the PIN by communicating with the "administrator." According to Blackhawk, Qwikcash's Complaint fails to provide a plausible allegation that Blackhawk's system performs at least the initial PIN-creation procedure; that is, Qwikcash does not explain how Blackhawk (the "administrator," in Qwikcash's reading) requests a PIN from a customer seeking to purchase a gift card (the "first party," in Qwikcash's reading), or how the customer, or "first party," supplies a PIN to Blackhawk. (Dkt. #11 at 7).

Blackhawk explains that the alleged involvement of its system in the initial PIN-creation procedure is implausible on its face because it cannot logically be that both the (non-administrator) first party supplies a PIN, as claim 17 requires, *see* '445 Patent, col. 15 l. 20, *and* that the PIN comes as a preset default value matching the last four digits of the card number, as the Complaint alleges, (Dkt. #1 ¶ 24). (Dkt. #11 at 13).

Additionally, Blackhawk asserts that claim 17 imposes a mandatory sequence of steps, while the Complaint fails to plausibly allege that the Reward Cards adhere to such a sequence. (Dkt. #11 at 15–16). Specifically, Blackhawk contends that the

4

presence of the word "said" before "PIN" in the steps of claim 17 following the initial PIN-creation procedure (*i.e.*, the "requesting" and "supplying" steps) excludes any other performance of the method besides the sequence presented in claim 17. *See* (Dkt. #11 at 15–16). Thus, according to Blackhawk, the Complaint's allegations do not cohere with the sequence required by claim 17, rendering the Complaint facially implausible. (Dkt. #11 at 12–13).

Qwikcash contends that each of the above theories offered by Blackhawk—regarding the PIN-creation and -change procedures and the sequence required by claim 17—is a matter of claim construction, the adjudication of which is inappropriate at the pleadings stage. (Dkt. #12 at 9–12). In reply, Blackhawk argues that the allegations of the Complaint itself, even read in the light most favorable to Qwikcash, present an implausible claim of infringement and therefore must be dismissed. (Dkt. #14 at 1).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While, for the purposes of Rule 12(b)(6), a court must accept as true all well-pleaded facts in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the stated claim must nevertheless be "plausible on its face" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The plausibility threshold is surpassed when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

**A. Direct Infringement**

To state a claim of direct infringement, the plaintiff need only give the defendant "fair notice" of the infringement claim and "the grounds upon which it rests." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)); *see also In re Bill of Lading*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). "Fair notice," in turn, requires the plaintiff to plausibly allege that the accused products meet "each and every element of at least one claim" of the asserted patent. *Disc Disease*, 888 F.3d at 1260; *Bill of Lading*, 681 F.3d at 1342; *see also Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955, 2016 WL 3542430, at *4 (E.D. Tex. Jun. 28, 2016) (holding that because the plaintiff failed to plausibly allege one element of a patent claim, its "direct infringement pleadings [were] constructed upon a fatally flawed foundation.").

While the "fair notice" standard is lenient, litigants may nonetheless "plead themselves out of court by alleging facts that establish defendants' entitlement to

prevail." *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *see also McKeown v. City of Chicago*, 20 F.App'x 856, 858 (Fed. Cir. 2001); *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556, 2020 WL 5640233, at *4–5 (C.D. Cal. Sept. 3, 2020); *Arsus, LLC v. Tesla Motors, Inc.*, No. 20-cv-00313, 2020 WL 5552868, at *2 (N.D. Cal. Aug. 14, 2020). For example, in *Mosaic Brands*, a direct infringement claim was dismissed because the claim language and alleged features of the accused products were sufficiently incongruous as to make the complaint implausible on its face. 2020 WL 5640233, at *4. Similarly, in *Arsus*, the court dismissed without prejudice the direct infringement claim because the complaint's theory of infringement was implausible on its face. 2020 WL 5552868, at *2. Specifically, the court held that the complaint effectively admitted that the defendant's accused products did not contain a key feature of the patent claim. *Id.* Consequently, the complaint implausibly alleged direct infringement by the accused product and thus required dismissal. *Id.*

Similarly here, the pleading defect identified by Blackhawk is not that Qwikcash has failed to allege *enough* or *sufficiently specific* facts to survive a Rule 12(b)(6) motion to dismiss, but rather that—given irreconcilable internal inconsistencies on the face of its pleading—Qwikcash's claim of direct infringement is patently implausible. The Court agrees.

Although Qwikcash's Complaint identifies specific accused products, the Reward Cards, and alleges infringement of "each and every element of . . . claim 17 of the '445 Patent," the Court cannot disregard the clear implausibility of the claim. (Dkt. #1 ¶ 18). Like in *Mosaic Brands* and *Arsus*, Qwikcash has pleaded itself out of

7

court by presenting factual assertions that are implausible on their face and thus require dismissal. Specifically, Qwikcash alleges that a first-party requestor must supply the initial PIN to the administrator. (Dkt. #1 ¶ 23); *accord* '445 Patent, col. 15 l. 20. But Qwikcash also alleges that the PIN is preset to a default value matching the last four digits of the card number. (Dkt. #1 ¶ 24). As demonstrated below, both allegations cannot be true.

According to Qwikcash, the PIN-creation procedure covered by claim 17 operates as follows: the first party uses the screen—displayed below—on Blackhawk's website to supply a PIN. (Dkt. #1 ¶¶ 23–24).

**Set/Change PIN**

Visa® or Mastercard®

Enter 16 Digit Card #

CVN

❓ Help

Enter Desired 4-digit PIN

☐ I'm not a robot   reCAPTCHA
                    Privacy - Terms

**Set/Change PIN**

Gift Cards are valid in the US only.
Small Business Visa Prepaid Cards can be used anywhere Visa debit cards are accepted.

**Notes About Your PIN:**

- This PIN can only be used for Point of Sale (POS) transactions.
- This PIN will NOT allow you to retrieve cash out of an ATM machine.
- Select credit for signature transactions and debit for POS transactions using your PIN.
- You can change your PIN at any time by using the form.
- If your card has not been activated, changing your PIN will automatically activate your card.

However, for a first party to use this screen to supply a PIN, the first party must also supply the card number. (Dkt. #1 ¶ 24). This requires the administrator to have *already* provided the card number to the first party. If the card number has already been created, then (according to Qwikcash) the PIN has already been set to the default value equivalent to the last four digits of the card number. *See* (Dkt. #1 ¶¶

8

24, 29). The initial PIN cannot simultaneously be an original PIN supplied by the first party and a default value reflecting the last four digits of the card number. On its face, Qwikcash's alleged theory of direct infringement thus contains a fatal inconsistency.

The incoherence of Qwikcash's allegations is further demonstrated by its failure to provide a plausible allegation that Blackhawk's system performs at least the initial PIN-creation procedure in claim 17. In its pleadings, Qwikcash provides no plausible explanation for how Blackhawk (as "administrator") requests a PIN from a customer seeking to purchase a gift card (the "first party"), or how the customer supplies a PIN to Blackhawk. The "Set/Change Pin" screenshot depicted above and relied upon by Qwikcash in this regard refutes, rather than supports, the allegation that Blackhawk's system performs the initial PIN-creation procedure described in claim 17. On its face, the screenshot demonstrates an option for a gift-card recipient (the "second party"), not the customer, to set a PIN. As noted herein, the page requires entry of a gift-card number and card verification number ("CVN"), which could not be known by the customer prior to the issuance of the gift card. Common sense and logic therefore dictate that the "first party" could not possibly supply a PIN before the card issues.

Qwikcash attempts to explain away its "fatally flawed foundation," *Ruby Sands*, 2016 WL 3542430, at *4, by averring that the method described in claim 17 does not require a particular sequence. (Dkt. #12 at 9–10). According to Qwikcash, the issuing of the card (and the creation of the card number inherent in the card's

9

issuance) can take place prior to the requesting and supplying steps. *See, e.g.*, (Dkt. #12 at 10). In effect, Qwikcash asserts that the "supplying" limitation in claim 17 may be read such that any "supplying" of PIN information at any time and to anyone by the first party is sufficient.

Qwikcash's reading, however, is irreconcilable with the structure and text of claim 17, which unmistakably provide that the PIN that is part of the Qwikcash ticket created by the administrator during the "issuing" and "activating" steps of claim 17 is the same PIN provided by the first party in the "supplying" step. Under claim 17's plain language, the "issuing" and "activating" steps expressly reference "said PIN," and the only PIN present in the claim to that point is the PIN supplied by the first party. *See* '445 Patent, col. 15 l. 29. In short, the use of the term "said PIN" in the issuing step necessitates that the PIN in the issuing step be the same PIN created from the supplying step. *See* '445 Patent, col. 15 l. 29. Thus, the issuing step must take place *after* the supplying step. Qwikcash's strained reading of claim 17 defies common sense and cannot render its direct infringement allegations plausible.

Finally, Qwikcash insists that Blackhawk's motion must be denied because it turns on matters of claim construction that are inappropriate for determination at the pleadings stage. Qwikcash is correct that claim-construction disputes should not be adjudicated at the motion-to-dismiss stage of proceedings, where analysis is confined to the sufficiency of the complaint. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). But the Court need not engage in claim construction to decide Blackhawk's dismissal motion because Qwikcash's allegations

of direct infringement are patently unworkable. To survive a motion to dismiss, a stated claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. Qwikcash's self-contradictory and incoherent factual allegations of direct infringement fail to meet this standard.

For these reasons, Qwikcash's direct infringement claim will be dismissed.

## B. Indirect Infringement

Where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed. *Bill of Lading*, 681 F.3d at 1333 (quoting *Linear Tech. Corp. v. Impala Linear Corp.,* 379 F.3d 1311, 1326 (Fed. Cir. 2004)) ("It is axiomatic that "[t]here can be no inducement or contributory infringement without an underlying act of direct infringement."); *Nalco*, 883 F.3d at 1355 (same). Because the Court has dismissed the direct infringement claim, the contributory and induced infringement claims cannot survive. Therefore, the Court dismisses Qwikcash's claims of indirect infringement.

## IV. CONCLUSION

Blackhawk's Motion to Dismiss, (Dkt. #11), is **GRANTED**. It is therefore **ORDERED** that Qwikcash's claims of direct, induced, and contributory infringement are **DISMISSED without prejudice**. To proceed with any of these claims, Qwikcash is permitted to replead once, but must amend its Complaint by no later than **December 4, 2020**.

It is further **ORDERED** that all other pending motions before the Court are **DENIED as moot**.

All deadlines in the Scheduling Order in this case are **STAYED** pending further order of the Court.

**So ORDERED and SIGNED this 17th day of November, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE